STATE *ex rel.* ROBERT F. NEAFIE v. BOARD OF COMMIS-
SIONERS OF EVERGLADES DRAINAGE DISTRICT, etc., *et al.*

190 So. 712

Division A

Opinion Filed July 28, 1939

*Watson & Pasco & Brown,* for Relator;

*Fred H. Kent, Francis D. Wheeler; Kent,, Kassewitz, Wheeler & Crenshaw, G. G. Ashly, Stapp, Gourley, Ward & Ward,* for Respondents.

BUFORD, J.—On the 25th day of January, 1938, alternative writ of mandamus was issued by this Court commanding:

"Now THEREFORE, we being willing that justice be done in the premises, do, hereby command that you the respondent, Board of Commissioners of Everglades Drainage District and James H. Franklin, H. L. Lyons, D. R. McNeil, George A. Chalker, and James E. Beardsley, as and constituting the Board of Commissioners of Everglades Drainage District, do forthwith make up through your respective officers and employees, as required by law, for the respective tax assessors of the counties of Monroe, Dade, Broward, Palm Beach, Martin, St. Lucie, Collier, Hendry, Glades, Highlands and Okeechobee a list of the lands in Everglades Drainage District lying in each of said counties according to the zones provided in Chapter 10026, Laws of Florida, designating upon each of such lists the amount of taxes levied against each parcel of land in Everglades Drainage district in such counties for the year 1937 and for the years 1933, 1934, 1935 as provided by said Chapter 10026, Laws of Florida, excepting therefrom lands not subject to taxation by said Act, and after publication of notice as required by Section 1167 of the Revised General Statutes, forthwith do cause such lists to be signed and attested and forthwith forwarded to the tax assessors of the respective counties in which said lands lie; and that you, the said respondents, J. Otto Kirchheiner, as Tax Assessor of Monroe County; J. N. Lummus, Jr., as Tax Assessor of Dade County; L. O. Hanson as Tax Assessor of Broward County; James M. Owens, Jr., as Tax Assessor of Palm Beach County; A. C.

Courson as Tax Assessor of Martin County; E. R. Pierce as Tax Assessor of St. Lucie County, D. W. McLeod as Tax Assessor of Collier County; Dennis Small as Tax Assessor of Hendry County; I. E. Scott, as Tax Assessor of Glades County; P. G. Gearing as Tax Assessor of Highlands County, and Robert LaMartin as Tax Assessor of Okeechobee County, do receive the said lists for your respective counties and forthwith, after receipt thereof, do enter upon the tax rolls for the year 1938 of the counties of which you are respectively tax assessors, the taxes or assessments shown by the lists so forwarded and by said Chapter 10026, Laws of Florida, to be assessed for the year 1937, and for the years 1933, 1934, and 1935 in the manner provided by law, and that you do attach to your respective tax rolls for the year 1938 upon which such lists and taxes are commanded to be entered as aforesaid before delivery thereof to the tax collectors of your respective counties the special warrant required by Section 1168 of the Revised General Statutes; or that you, the said respondents, do severally show cause before the Supreme Court of Florida at Tallahassee, Florida, on the 8th day of February, 1938, for your failure or refusal so to do."

Certain of the respondents have filed motions to quash and the respondents Owens and Lummus have filed answers or returns to which motions to strike are addressed.

The pertinent parts of the answers aver:

"That he has spread of record such lists as have been heretofore submitted in accordance with law by the Board of Commissioners of the Everglades Drainage District but that said Commissioners have failed to arrange adequate compensation as required by law to pay your respondent as Tax Assessor of Dade County, Florida, for spreading the said assessment on the official tax roll of Dade County,

Florida, and that said Board of Commissioners of the Everglades Drainage District is now in default in the payment of commission due your respondent as Tax Assessor of Dade County, Florida, for the year 1937, in the amount of $1,186.81; that for many years prior hereto your respondent has assessed said taxes at great cost and expense to the office of the Tax Assessor, for which in many instances no compensation whatsoever has been paid and in other instances only a small part of the compensation has been paid.

"Your respondent further respectfully shows unto the Court that in the event the assessment is made as required in the said alternative writ on the full amount as fixed under the original statute referred to that your respondent would be entitled to two per cent of the amount assessed and by the best computation possible at this time the anticipated bill for services for spreading the new assessment would amount to approximately three times that of the amount above set forth of $1,186.81.

"Your respondent would further show unto the Court that in view of the non-payment of taxes in this district and in view of the many suits filed on behalf of bondholders against said district, and the subsequent orders and settlements in said actions that the said bondholders, as creditors of the district, and the said district itself have made no adequate provision for the payment to your respondent and other tax assessors for their services so rendered and to be rendered.

"Your respondent would further show unto the Court that the services of the tax assessor is a benefit to the bondholders and to the district, and that the interest of both the bondholders and the district could be served if some provision could be made for the payment of your respondent and the other tax assessors in said district; that it is physi-

cally impossible for your respondent and other tax assessors to continue to spread the assessments at cost to themselves when no adequate provision is made between the bond-holders and the district for payment for such services.

"Your respondent would further respectfully show unto the Court that he has no personal interest, either individually or as tax assessor, concerning the result of any controversy between the relator and the respondent the Everglades Drainage District and that, as provided by law, it is the duty of your respondent and other tax assessors to assess taxes not only for this district but for the other districts of the State of Florida, county school boards and other taxing districts and that the compensation for these services is fixed by law, no one district or taxing division being responsible for the total expense of your respondent's office."

In the case of State *ex rel* Milam, *et al,*. 113 Fla. 491, 153 Sou. 100, 125 and 136, we said:

"In the first place, the law does not provide that the tax assessors shall be paid in advance. In fact, their compensation cannot be determined until after the tax rolls are completed. In Section 1174, Revised General Statutes, Section 1545 Compiled General Laws, it is provided as follows: 'The tax assessor shall receive as compensation for the duties required of him by the provisions of this Article a commission of one per cent upon the amount of drainage taxes *assessed* within the respective county *except errors.'* '(Italics ours.) There is no provision as to exactly when this compensation is to be paid, but it is clearly *after* the tax assessors have completed their work. If Chapter 14717 should be considered, regarding the compensations of the tax assessors, it provides the same as Section 1174, Revised General Statutes, *supra,* with this additional provision: '*Upon the completion* of the tax roll for each year the board

shall pay to the tax assessor an amount equal to eighty per centum of the total compensation which shall be on the face of the tax roll, earned by him,' etc. We think, however, that Section 1174, Revised General Statutes, must govern in compensating the assessors for making the extensions under Section 1167, Revised General Statutes, which we have held must be followed in making the assessments herein sought.

"In the second place, regarding the defense set up by the respondents, Board of Commissioners of Everglades Drainage District, that they have no funds to pay the assessors, we say it is without merit for the reason there is no allegation that the tax assessors will not do the work unless the funds are immediately available. In fact, the tax assessors of the respective counties are respondents in this very proceeding, and neither of them has set forth in the answer or return that there are no funds in hand or available to compensate him for his work, and that for such reason he declines to receive any tax list prepared by the board of commissioners and enter the drainage tax therein contained on the tax roll of his county."

In addition to what was said there, we may say here that the contention is no better defense for the tax assessors than it was for the Board of Commissioners of the Everglades Drainage District in that case. There is no provision for the collection of the commissions by the tax assessor in advance. When the taxes have been levied, assessed and paid, the cost incident thereto should be paid first and the tax assessors have their remedy to compel the payment of their fees, should they not be paid when funds are available for such payment.

So the answers must be held insufficient and the motion to strike is granted.

The motion to quash the alternative writ presents two questions, as follows:

"First: Has relator as holder of negotiable coupon bonds and refunding bonds of every outstanding issue of Everglades drainage district bonds, the right by mandamus to compel the board of commissioners of the district to prepare and send down to the respective tax assessors lists of lands subject for the years 1933, 1934, 1935 and 1937, to drainage tax in the district, and to require the tax assessors to enter such lists upon the tax assessment rolls of their respective counties, in accordance with the provisions of Sections 1167 and 1168, Revised General Statutes of Florida?

"Second: Is not the acreage tax rate applicable in such a mandamus proceeding, that provided by Chapter 10026, Acts of 1925?"

The record shows that the outstanding bonds were authorized by Chapters 7862 of 1919, 8413 of 1921, 9119 of 1923, and 10027 of 1925. The relator is the holder in due course and for value of: Six series "A" refunding bonds, unmatured, with past due interest coupons attached from January 1, 1933, to January 1, 1938, inclusive; two 6 per cent bonds, matured 1932, dated July 1, 1920; nine 6 per cent bonds, matured 1932, dated July 1, 1921; two 6 per cent bonds dated January 1, 1921, matured January 1, 1938, with past due interest coupons attached from January 1, 1933, to January 1, 1938, inclusive.

Pursuant to Chapter 10026, Acts of 1925, the lands on which taxes were levied to pay the principal and interest of said bonds were divided into zones, and taxes thereon levied for each year after 1926 are as specifically set forth in paragraph 7 of the writ.

By Chapter 17902, effective June 10, 1937, it was attempted by legislative enactment to reduce the acreage taxes

as provided by Chapter 10026 and it was attempted to levy what is therein styled a debt service tax upon zones embraced in the district which zones are described in the writ. In addition to the debt service tax the 1937 Act attempts to levy what is styled a maintenance tax to pay the cost of administering the affairs of the district and in addition thereto a 1-mill ad valorem tax on all the real, personal and mixed property in the district. The effect of the 1937 Act is to reduce the annual acreage tax levy from about $2,000,000 a year to about $600,000 a year and the entire acreage tax provided by the 1937 Act is far less than the aggregate of the tax levies under the 1925 Act. The taxes as levied by the legislative Act, Chapter 10026, Acts of 1925, were irrevocably pledged for the payment of all the bonds of the district and interest thereon. See State *ex rel.* v. Milam, *supra.*

The reasons stated in the opinion, *supra,* for holding the provisions of Chapters 13633, Acts of 1929, and 14717, Acts of 1931, inapplicable to meet the contract obligations of drainage district and, therefore, violative of Section 10, Article I of the Constitution of the United States, are applicable with like effect to Chapter 17902, Acts of 1937, and we feel it is not necessary to add anything to what was said in the case of State *ex rel.* v. Milam, *supra,* except in regard to the powers and duties of the Board of Commissioners of Everglades Drainage District to prepare and certify the lists of lands subject to taxation under the 1925 Act, *supra,* for the years 1933, 1934, 1935 and 1937, it being contended that at most the taxes can be certified and extended on the tax rolls for no more than three years prior to the date of said certification and extension on the tax roll.

In State *ex rel.* v. Milam, *supra,* we said:

"The tax assessor is required under the law to assess

omitted State and county taxes for three years back. There is no specific provision to the contrary in the law regarding drainage tax assessments. The assessor can certainly assess omitted lands when certified by the board of commissioners without causing undue confusion and disorder. We find nothing in the law to preclude the Board of Commissioners of Everglades Drainage District from preparing and certifying the lists of land subject to drainage tax at any time after the date fixed by Section 1167, Revised General Statutes, Section 1537, Compiled General Laws. If they fail to function in the performance of the ministerial duties required of them under the law, certainly the court can compel them by mandamus to meet and make the lists in the manner prescribed for three years back, and certify them to the tax assessors under the law governing the assessment of omitted lands for State and county taxes, which law, as we have shown, is made applicable by the provisions of Section 1167, *supra,* to drainage taxes. See also Hicks v. Cleveland (C. C. A. 4), 106 Fed. 459, and Padgett v. Post (C. C. A. 4), 106 Fed. 600."

The 1925 Act, *supra,* constitutes a legislative assessment and levy of the taxes therein provided. Land-owners and officers are put upon notice of the assessment and levy. The certifying of the lists and the extension of taxes on the tax roll are ministerial duties only and those charged with the performance of that duty at and when it is required to be performed can not be heard to urge the non-performance of their duties as a bar to being required to perform.

The bond holders acquired a vested right in the assessment and levy as made and the duty of the Board of Commissioners of Everglades Drainage District in regard to certifying the lists and the duties of the tax assessors to extend the lands in the lists in accordance with the legis-

lative assessment and levy on the tax rolls are continuing duties, ministerial in character, which these officers may be required by court order in mandamus to perform at any time after the duty to perform has matured and the officers have failed to perform.

Section 1 of Chapter 9180, Acts of 1923, Section 925 C. G. L., has reference to ad valorem tax which might have been lawfully assessed or collected upon any property in the State of Florida *when such tax has not been lawfully assessed or levied.* (Emphasis supplied.)

Therefore, the provision contained in Section 1167 R. G. S., 1537 C. G. L., as follows: "Except as herein specifically provided, all laws relating to State and county taxes in this State are hereby made applicable to the Everglades Drainage District,"—can not be construed to make the provisions of Section 1 of Chapter 9180, Acts of 1923, Section 925 C. G. L., apply to the acreage drainage tax because the acreage drainage tax is a tax which has been levied and assessed by legislative Act for each and every year. It is only the administrative duty to certify and extend an assessment on the tax rolls which has been disregarded with the result that the tax levied and assessed has not been collected. The tax stands assessed and levied.

It, therefore, follows that the motion to quash is denied and, unless respondents file sufficient answer within fifteen (15) days from the date of this order, peremptory writ will issue.

It appears, however, that the time has long since passed when the certification by the Board of Commissinoers of Everglades Drainage District to the tax assessors and the extension on the rolls by the assessors can be made for the year 1938. Therefore, the relators will be allowed to amend the alternative writ to make same applicable to include the

tax for the years 1933, 1934, 1935 and 1937 and 1938 to be entered on the tax rolls for 1939.

So ordered.

TERRELL, C. J., and THOMAS, J., concur.

WHITFIELD, J., concurs in opinion and judgment.

Justices BROWN and CHAPMAN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.