**WALTER GILL v. C. W. LIVINGSTON, et al.**

29 So. (2nd) 631
February 4, 1947
Rehearing denied April 8, 1947.

January Term, 1947
Special Division A

M. A. Rosin, Alvin B. Rowe and J. Lewis Hall, for appellant:

W. B. Shelby Crichlow, Wilbur W. Whitehurst and Mabry, Reaves, Carlton, Anderson, Fields & Ward, for appellees.

FABISINSKI, Associate Justice:

The bill of complaint in this cause prayed for reformation of a five-year lease of lands in Sarasota County, and for specific performance of a clause in the lease which purported to give lessee an option to purchase.

The leased lands were the property of defendants, held as estates by the entireties, each of the married couples owning a half interest in the lands, in that quality of estate.

The lease was executed with but one subscribing witness; thus the express provision of Section 689.01, F. S., requiring two subscribing witnesses, was not observed in the execution of the lease. Section 708.07, F.S., permits specific performance of the separate property of married women, but only if the agreement to be performed has been executed and acknowledged in the form prescribed in Section 689.01, F.S.

Reformation of the lease was necessitated by reason of the fact that the lands as described in the lease would, by the erroneous description, except for a small part, appear to be located in DeSoto County, Florida. Defendants owned no lands in Florida except lands in Sarasota County, and they unqualifiedly testified that they intended to lease all the land they owned in Florida to the plaintiff by the lease which they

executed. They resist the right to reformation, however, because of the defect in attestation of the lease.

Plaintiff was in possession of the lands (for all practical purposes as related to this action) before the execution of the lease, and remained in possession. The reserved rent for the first year was paid, and accepted as such by the defendants.

The chancellor decreed reformation as prayed, and entered a declaration that, as reformed, despite the defect in attestation, the lease was "valid and binding upon the parties thereto in all respects according to its terms and provisions." His action in this respect is before us on cross-appeal by the defendants below (appellees here), and this question will be disposed of before entering upon a discussion of the original appeal.

In Steen v. Scott, 144 Fla. 702, 198 So. 498, we held that a married woman owning property as her separate estate who accepted rent from a lessee for years was estopped to contend that the lease was invalid because of the failure of the notary to certify that the wife acknowledged execution of the lease separate and apart from her husband as required by statute. Upon that authority we hold that the defendants below are estopped from contending that the lease here involved is invalid for the reason that it was executed in the presence of only one subscribing witness. In the situation before us, only the parties are involved, and as a matter of fact all four defendants were physically present at the time of execution of the lease, and might have subscribed as witness to the signature of each other. They have accepted benefits under the lease, have placed the lessee in possession, have negotiated to convey the lands subject to the lease, and in all respects have recognized it as being an effective conveyance, and in equity they ought not to be permitted to disavow it now. See also Johnson v. Elliott, 64 Fla. 318, 59 So. 944.

The Chancellor was fully justified under the facts before him in decreeing that the parties were bound by the lease, and in decreeing reformation, and the cross-appeal is accordingly denied.

The plaintiff (appellant) asks for a reversal of that part of the decree which denies specific performance of a claimed

effective exercise of rights given under the option clause of the lease. That clause is in the following form:

"This lease is granted . . . subject to the right of parties of the first part to sell the above described property and thereby terminate the estate hereby created by so doing, and returning unto the party of the second part unearned lease money, but in the event of sale, parties of the first part are to give party of the second part the refusal of the lands involved in the said sale at the same price and under the same terms as those governing the sale to the prospective purchaser, and party of the second part shall have thirty days within which to avail himself of the opportunity so to purchase."

In Gulf Theatres v. Guardian Life Insurance Company, 26 So. (2) 188, 193 (not yet published in our reports), this Court construing a similar provision, said that it confers no obligation on the part of the lessor to sell the property to the lessee under any condition except that the lease is to be cancelled. It *confers on* the lessor the right to cancel the lease, which right the lessor would not have in the absence of an express provision to that effect. It *binds* the lessor, in the *event he elects to cancel,* to give the lessee an opportunity to purchase.

The Chancellor expressly stated that he had relied on this decision in denying specific performance, and unless the facts in this case do not accord with those in the cited case, he was correct in so doing.

On July 8, 1943, C. W. Livingston, one of the defendant owners, wrote plaintiff, advising him that the "land has been sold, subject to all outstanding . . . charges, rents," and giving the terms of the proposed sale; and that "this will serve as full and sufficient notice of such sale, and, if you desire to purchase . . . under the same terms and conditions, it will be necessary for you to comply with such terms and pay the full purchase price as specified."

On July 15, 1943, the plaintiff through his attorney, wrote to Livingston in reply, exercising his right of purchase.

On July 28, 1943, Livingston again wrote to plaintiff, this time advising him that the previous offer to purchase by the

unnamed third party) had been withdrawn, "such offer never having been accepted," and that the defendants had a bona fide offer for the lands at an increased price, to be conveyed "subject to any and all rights existing under the lease which you hold."

In the meantime plaintiff's attorney had been in communication by telephone with the attorney for defendants, and had informally learned of the changed situation, and on the same day that the second letter was written by Livingston, and before receipt of such letter, had instituted this suit, in effect relying on a completed contract of sale resulting from the notice or offer contained in the first letter and its acceptance by plaintiff.

The annual rentals on the lease were payable in advance, and the lease was effective from August 1, 1942. On July 30, 1943, plaintiff tendered the annual rental for the second year, and the tender was refused. It is this refusal to accept rent for the second year of the lease which forms the principal basis of the contention of appellant that the lease was thereby terminated. If it were thereby or otherwise terminated, the rule stated in the case of Gulf Theatres v. Guardian Life Insurance Company, supra, would not operate to prevent specific performance. The chancellor impliedly found that the tender and refusal did not have the effect of terminating the lease.

The option clause is effective only "in the event of sale." There is no evidence in the record that either of the two prospective sales mentioned in the Livingston correspondence was ever completed and enforceable agreement, although it has been assumed throughout the entire record that the purchaser was only awaiting the outcome of this action to complete the last sale. Incidentally the purchaser at both sales was the same individual, with whom the plaintiff was engaged in extensive litigation concerning conflicting claims arising out of other leases to the same lands, of which fact defendants had full knowledge (being defendants in one phase of that litigation), and this circumstance is argued as being of some weight in the consideration of the present controversy. But we attach no particular significance to it, except as it is a

circumstance in a determination of the general equities of the case, if there is any room for consideration of that factor. The first sale was subject to "rents and charges." The second was specifically subject to plaintiff's lease, and no attempt has been made to eject him from the lands (the term has now nearly expired), by legal proceedings or otherwise under the lease here involved. Appellees point out that a reason for the refusal by the defendants of the tender may have been that defendants felt that the prospective purchaser, and not they, was entitled to such rentals. Be that as it may, there is no evidence to show that the lease was ever terminated by any deliberate or calculated act of the defendants.

In another aspect of the case, although we express no opinion regarding it as it applies to the facts of this case, since we decide it on other grounds, some of the cases cited by us in support of our decision in the Gulf Theatres case, and other decisions not there cited, imply that the lessor is under no obligation to sell to the lessee, unless he has *bound* himself to sell to a third party (subject to the rights of the lessee). In other words, lessor may withdraw from a sale to third parties without rendering himself liable to the lessee to perform. To hold otherwise would be to hold that an abortive agreement to sell to a third party would fix the terms and conditions of a sale upon an attempted exercise of the option. This was certainly never the meaning of the clause in question.

The Chancellor, having found that the lease had not been terminated, and there being ample evidence to sustain such finding, we affirm his decree in refusing specific performance on the authority of Gulf Theatres v. Gurdian Life Insurance Company, supra.

Affirmed.

THOMAS, C.J., TERRELL and CHAPMAN, JJ., concur.